UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIMBERLY ADAMS, ET AL.                        CIVIL ACTION

VERSUS                                        NO: 08-4326

BIG LOTS STORES, INC.                         SECTION: R(1)

**ORDER AND REASONS**

Before the Court is defendant's, Big Lots Stores, Inc., motion to sever Plaintiffs' actions and transfer venue.[1] For the following reasons, the Court GRANTS defendant's motion to sever and DENIES defendant's motion to transfer.

**I. Background**

These motions involve the claims of 219 current and former Assistant Store Managers (ASMs) of Big Lots Stores, Inc., who

---

[1] This Order will also apply to Big Lots's motions to sever and transfer venue in *Abramczyk v. Big Lots*, Case No. 08-4330, *Beringer v. Big Lots*, Case No. 08-4327, *Chappell v. Big Lots*, Case No. 08-4329, and *Brown v. Big Lots*, Case No. 08-4328.

filed five lawsuits against the company for violation of the Fair Labor Standards Act (FLSA). Plaintiffs assert that Big Lots misclassified them as managerial employees and exempt from the overtime provisions of the FLSA. The Big Lots litigation has a long history in this Court.

In November 2004 and December 2005 respectively, two groups of plaintiffs filed purported collective actions on behalf of all similarly situated Big Lots's ASMs (*Johnson v. Big Lots Stores Inc.*, Case No. 04-3201; *Alford v. Big Lots Stores Inc.,* Case No. 05-6627). The Court conditionally certified the Big Lots ASMs as a class under section 216(b) of the FLSA and consolidated the two cases. (Case No. 04-3201, R. Doc. 36; Case No. 05-6627, R. Doc. 54). Roughly 1,200 plaintiffs subsequently opted into the collective action, including these plaintiffs. On June 1, 2007, Big Lots moved the Court to decertify the collective action. (R. Doc. 95). The Court denied this motion and, with the assistance of Magistrate Judge Sally Shushan, established an aggressive discovery schedule in order to prepare the matter for trial. (R. Doc. 113). The parties engaged in extensive discovery and motion practice in advance of the collective action trial, which took place in May 2008.

In the collective action trial, the Court heard 43 hours of live trial testimony and presentations from counsel over the

course of seven days.  Each side was authorized to call 20 nonexpert witnesses, either live or by deposition.  Big Lots's witnesses included an executive vice president, two district managers who were responsible for overseeing the operation of 15 stores each in Florida and Texas, as well as ASMs who did and did not opt into the suit as plaintiffs.  The plaintiffs offered the testimony of 16 opt-in ASM's, two of Big Lots's corporate representatives, and two district managers.  Between them, the parties called three expert witnesses.  The parties also submitted more than a thousand exhibits, consisting of corporate job descriptions, store and employee manuals, payroll records, declarations prepared by opt-in plaintiffs, survey responses completed by opt-in plaintiffs, and employee personnel records. After considering all of the evidence, the Court decertified the class on June 20th, 2008 and dismissed the claims of the opt-in plaintiffs without prejudice. (Case No. 04-3201, R. Doc. 401). The Court found that significant differences in plaintiffs' employment experiences existed and held that resolving the matter as a collective action was unfair to both sides.  (Case No. 04-3201, R. Doc. 401).

Following decertification, the Court was left with the claims of the 45 original plaintiffs in Case Number 04-3201 and Case Number 05-6627.  The Court established an expedited

discovery and trial schedule.  From January 26-27, 2009, the Court held bench trials on three of the plaintiffs' cases.  The Court ruled in favor of two of the plaintiffs, and the third plaintiff dismissed his case with prejudice.  By May 12, 2009, the other 42 plaintiffs voluntarily dismissed their claims with prejudice.

After decertification and before the Court had disposed of the 45 original claims, the 212 current plaintiffs, all former opt-ins, filed these five new lawsuits.  Although there are five lawsuits, each plaintiff is asserting an "individual action" under the FLSA.  Plaintiffs are grouped by employment status and time of employment.  The Plaintiffs in *Abramczyk v. Big Lots*, Case No. 08-4330, are former ASMs who stopped work before August 2004.[2]  The Plaintiffs in *Adams v. Big Lots*, Case No. 08-4326, are former ASMs who worked before and after August 2004.  The Plaintiffs in *Beringer v. Big Lots*, Case No. 08-4327, are former ASMs who began work after August 2004.  The Plaintiffs in *Chappell v. Big Lots*, Case No. 08-4329, are current ASMs who worked before and after August 2004.  And finally, the Plaintiffs in *Brown v. Big Lots*, Case No. 08-4328, are current ASMs who

---

[2]August 2004 is relevant because new Department of Labor Regulations relating to the executive exemption went into effect on August 23, 2004.

4

began work after August 2004.

Big Lots now moves to sever and transfer plaintiffs' claims in each of the five cases. Big Lots contends that the claims are misjoined since the only relationship among them is that they were all formerly a part of the *Johnson* litigation. Big Lots further asserts that because the *Johnson* litigation forms the claims' only relationship to this forum, the severed claims should be transferred to the 58 different judicial districts wherein the respective claims arose.

**II. Joinder**

    **A. Legal Standard**

Under Rule 21, a district court has "broad discretion" to sever improperly joined parties. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *see also Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). To determine whether parties were properly joined under Rule 20(a), a district court must consider (1) whether the right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences," and (2) whether there is a question of law or fact common to all of the plaintiffs that will arise in the action. Fed. R. Civ. P. 20(a). Both requirements must be met for the parties to be properly joined. *See Porter v. Milliken &*

*Michaels, Inc.*, 2000 WL 1059849, at * 1 (E.D. La. Aug. 1, 2000); *see also* Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1653 (2001). Furthermore, courts may consider whether settlement or judicial economy would be promoted, whether prejudice would be averted by severance, and whether different witnesses and documentary proof are required for separate claims. *Rohr v. Metropolitan Ins. & Cas. Co.*, 2007 WL 163037, at *2 (E.D. La. Jan. 17, 2007).

**B. Discussion**

Big Lots argues that plaintiffs' claims fail to satisfy both of the permissive joinder requirements of Federal Rule of Civil Procedure 20(a). Because the Court finds that there are unquestionably some common questions of law and/or fact involved in Plaintiffs' claims, the Court will consider only whether Plaintiffs meet the first prong of Rule 20(a).

Big Lots contends that Plaintiffs' claims do not arise out of "the same transaction, occurrence, or series of transactions or occurrences," since each plaintiff's claim arose out of his or her employment experience as a Big Lots ASM. Plaintiffs assert that their claims arise out of the same transaction or occurrence, since they each arise out of Big Lots's corporate decision to classify ASMs nationwide as exempt executives under the FLSA.

6

The Court finds that plaintiffs' claims do not arise out of the same transaction or occurrence. "The exempt or nonexempt status of any particular employee is determined on the basis of whether the employee's salary and duties meet the requirements of the regulations." 29 C.F.R. § 541.2 (post-2004). *See also Ale v. Tennessee Valley Authority*, 269 F.3d 680, 688-89 (6th Cir. 2001) (embracing principle that "courts must focus on the actual activities of the employee in order to determine whether or not he is exempt" as opposed to reviewing a "vague job description"); *Mullins v. City of New York*, 523 F. Supp. 2d 339, 351 (S.D.N.Y. 2007). A job title alone is "insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2 (post-2004). Thus plaintiffs' day-to-day activities, not simply their employer's decision to classify them as exempt, must be examined to determine whether they were misclassified. And, as the Court previously found, plaintiffs' day-to-day duties varied considerably from store to store. After hearing testimony and evidence over the course of a seven-day bench trial, this Court previously found that the duties of Big Lots ASMs' varied "along the critically important axis of exempt managerial duties recognized by the regulations." *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 582 (E.D. La. 2008). The differences in daily duties meant that some ASMs were probably exempt, while

others probably were not.  The Court concluded that there were such variations in plaintiffs' actual work experiences that a collective judgment could not be justified. *Johnson,* 561 F. Supp. 2d at 579.

The current plaintiffs worked at different stores, in different states, with different district and store managers. Although there might be some overlap, each plaintiff's claim would require witnesses and evidence specific to that plaintiff's work experience as a Big Lots ASM.  Thus for the purposes of each plaintiff's claim, the relevant transaction or occurrence is that plaintiff's work experience. *See Randleel v. Pizza Hut of America, Inc.*, 182 F.R.D. 542, 544 (N.D. Ill. 1998) (in the context of racial discrimination, when plaintiffs do not allege a common discriminatory policy or practice, but rather, that discriminatory actions took place at different restaurants owned by the same defendant, plaintiffs' claims do not arise out of the same transaction or occurrence).  Plaintiffs' claims, therefore, do not arise out of the same transaction or occurrence. Accordingly, plaintiffs' claims are improperly joined under Federal Rule of Civil Procedure 20.  Pursuant to Federal Rule of Civil Procedure 21, the Court Grants defendant's motion to sever plaintiffs' claims.

**III. Transfer**

    **A.    Legal Standard**

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and the witnesses" and "in the interest of justice," the Court may transfer an action to any other district wherein the plaintiff could have filed suit.  The defendant must first demonstrate that the plaintiff could have brought the action in the transferee court initially. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44; *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*In re Volkswagen I*).  The defendant must then show "good cause" for transfer. *In re Volkswagen, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)(*In re Volkswagen II*); *see* 28 U.S.C. § 1404(a). The "good cause" burden accounts for the deference given to plaintiff's choice of venue. *In re Volkswagen II*, 545 F.3d at 315 n.10.  To show good cause, a defendant must satisfy the statutory requirements and clearly demonstrate that the transferee venue is more convenient for the parties and witnesses. *In re Volkswagen II*, 545 F.3d at 315.  When the transferee venue is not clearly more convenient, then the reviewing court should respect the plaintiff's choice. *Id.*

In determining whether transfer is convenient for the parties, witnesses, and in the interests of justice, the district court must consider the private and public interest factors

stated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). *See In re Volkswagen I*, 371 F.3d at 203. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *In re Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*

While the *Gilbert* factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. *Id.* Moreover, no single factor is dispositive. *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

**B.  Discussion**

The parties do not dispute that the plaintiffs could have brought the cases in the proposed transferee districts. The Court will thus consider whether defendant has shown "good cause"

10

for transfer. Big Lots contends that the following factors favor transfer: (1) the availability of compulsory process to secure the attendance of witnesses, (2) the cost of attendance for willing witnesses, and (3) the administrative difficulties flowing from court congestion.[3] Plaintiffs contend that the aforementioned factors are neutral to transfer and that the "other practical problems" and "familiarity of the forum" factors weigh heavily against transfer.

As is demonstrated below, these cases present unusual problems with no perfect solution. But, at the end of the day, both sides stand to benefit from the considerable efficiencies that can be achieved from litigating these cases in one forum. The potential inconvenience to witnesses can be minimized by using depositions, which the parties will most likely take of the witnesses regardless of where the action is pending. This Court can resolve these cases efficiently given its familiarity with the legal, factual and practical issues involved in this litigation. Transfer of these cases to 58 districts will cause years of delay and add enormous and unnecessary costs to resolving these claims, which individually do not involve a lot

---

[3] Big Lots also asserts that the cases should be transferred because the material events occurred in the proposed transferee districts. The *Volkswagen II* case does not cite this as a relevant factor in the transfer analysis.

of money.  For these reasons, and as is more fully explained below, the Court denies Big Lots's motion to transfer.

**1. Private interest factors**

*i. Availability of compulsory process to secure the attendance of witnesses*

Federal Rule of Civil Procedure 45(b)(2) gives the district court power to subpoena any witness within 100 miles of the trial, deposition, or hearing.  The relevant witnesses for each case are the plaintiff and plaintiff's former coworkers — the people familiar with plaintiff's day-to-day duties at the store. Plaintiffs have stipulated that they will appear at trial. Further, Big Lots probably will be able to secure the presence of its current employees.  It is true, nevertheless, that only a handful of the potential witnesses likely lives within the Court's subpoena power, since only one of the 212 plaintiffs worked in Louisiana.

There is a good chance, however, that a number of these witnesses will not live in the tranferee district either.  The facts of these cases arose four or more years ago.  As the Court learned in the previous proceedings, Big Lots had a significant turnover rate, and the more time that has passed since the relevant events, the more likely it is that witnesses will have

relocated. In any event, the parties will in all likelihood depose all of their witnesses before trial, regardless of where the actions are pending. Concerns about live appearances can be mitigated by using videotaped depositions, especially since these are bench trials, not jury cases. *See Max Planck Gesellschaft Zur Foederung Der Wissenschaften, E.V., v. General Elec. Co.,* 858 F. Supp. 380, 383 (S.D.N.Y. 1994)(conditioning transfer on the use of videotaped deposition testimony). Big Lots used these effectively in the collective action trial. Nevertheless, because present and former coworkers are more likely to reside within 100 miles of the proposed transferee districts, this factor favors transfer.

*ii. Cost of attendance for willing witnesses*

Similarly, since many of the relevant witnesses likely live closer to the district court near the Big Lots store where they once worked, it is less costly for them to attend trial there. *See In re Volkswagen I,* 371 F.3d at 205 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.") This factor also favors transfer.

13

>    *iii. Other practical problems that make trial easy, expeditious, and inexpensive*

Given the history of this case, this factor strongly militates against transfer. Over the past four and a half years, the Court has gained extensive knowledge about the legal and factual issues involved here, has developed an expedited trial plan, has resolved the major discovery issues, and is confident that it can dispose of the remaining cases in an efficient and effective manner.

After holding approximately 75 hours of trial on the misclassification claims of Big Lots's ASMs, the Court has become familiar with the Big Lots corporate operation and with procedures common to all Big Lots stores, such as the "Dock-to-Stock" process, "huddle meetings," and Big Lots's progressive counseling program. The Court is knowledgeable about the types of claims at issue, and knows which Big Lots's documents and witnesses are relevant to whether an ASM is exempt. The Court has heard the testimony of Big Lots's executives as to the corporate rationale for plaintiffs' classification. Further, the Court was able to conclude the cases of the 45 plaintiffs remaining in the *Johnson* actions in less than a year after the decertification order.

Under the trial plan adopted by the Court, each individual trial took a day or less.  The Court found that experts were unnecessary, since these are bench trials that do not involve issues of factual complexity.  The Court further determined that the trial of an individual plaintiff's case could be accomplished with a limitation of six witnesses per case.  This allowed the Court to hear testimony from the plaintiff, his supervisor, and co-workers.  The Court also allowed the parties to incorporate the May 2008 trial testimony of Big Lots's corporate representatives into their cases.  The limitation in the number of trial witnesses reduced the volume of necessary discovery.

The Court can use these same procedures to resolve these cases.  Transferring the cases all over the country would be inefficient and expensive.  Each plaintiff would have to pay a filing fee in the new district.  The attorneys for both sides would be forced to juggle the trial schedules of 58 or more judges.  They would have to revisit discovery disputes that have been resolved by this Court.  They would have to re-argue legal issues that this Court has decided.  Big Lots would have to send its corporate representatives to trials all over the country.

Because the cases involve some common questions of fact, if they are transferred, they may thereafter be transferred again to a single district for consolidated pretrial proceedings under 28

U.S.C. § 1407 (Multidistrict Litigation Statute). But, unlike this Court, a multidistrict court does not have the authority to try the individual cases; rather it would have to remand them to the 58 originating districts for trial. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach et al.,* 523 U.S. 26, 40-41 (1998). Transferring these cases across the country, only to transfer them back to one district for pretrial purposes and then return them to the 58 districts for trial, will add years of delay and enormous costs to the resolution of these claims. Keeping the cases in this court will allow them to be resolved on the merits in a much more expeditious and efficient manner.

All of these plaintiffs have been seeking a day in court since they opted into the *Johnson* litigation four years ago. Their claims are not large individually; the Court awarded the two meritorious plaintiffs less than $70,000 each. The time and financial burden involved in transferring these cases, only to have them subject to MDL transfer and then retransfer to 58 districts for trial, are strong deterrents to plaintiffs' pursuing these claims. Justice is better served by dealing with cases on their merits instead of making them disappear through a costly war of attrition. Defendant also has much to gain from having these cases dealt with efficiently, instead of pouring its resources into procedural maneuvering and plowing over the same

legal ground 58 or more times. Although defendant lost two cases, it managed to have 43 cases dismissed in less than a year since decertification. These cases can be managed and tried here efficiently, which weighs against transfer.

   **2.   Public interest factors**

   *i.   Administrative difficulties flowing from court congestion*

Big Lots contends that keeping the cases in this district will unnecessarily drain the Court's resources on cases that are related to this venue only through the *Johnson* litigation. Big Lots has not shown, however, how retaining these cases will pose an administrative burden on the Court. The Court's familiarity with the Big Lots ASM litigation will allow it to minimize the number of discovery and trial problems involved. If past is prologue, nowhere near 212 trials will have to be conducted. The trials that will take place can be done in one day each. This factor does not weigh in favor of transfer.

   *ii.   The familiarity of the forum with the law that will govern the case*

Plaintiffs contend that this factor weighs against transfer because of the Court's experience with the *Johnson* litigation. The Court does not doubt that other federal district courts are

17

equally capable of adjudicating claims under the FLSA. This Court, however, has extensive experience with both the applicable law *and* the facts related to the Big Lots store operation. Thus this factor weighs against transfer.

### 3. Conclusion

Although none of the plaintiffs resides in this district, plaintiffs' choice of this venue does not appear to be forum-shopping. Plaintiffs chose to re-file their cases in this district despite this Court's ruling against them in its decertification order. Plaintiffs chose a district where, because of the history of these proceedings, trial will be "easy, expeditious, and inexpensive." *Gilbert*, 330 U.S. at 508. Defendant has not shown good cause for transferring these cases to 58 different districts. Trying these cases in a single location, with a district judge and a magistrate judge experienced with the factual and legal issues involved in these claims, will be more convenient to the parties and will best serve the interests of justice. The Court denies defendant's motion to transfer.

## IV. Order

The Court ORDERS that Plaintiffs' cases be severed. Each

plaintiff is ordered to file an amended complaint asserting plaintiff's individual claim within 15 days of the date of this order.  This pleading shall be filed with the Clerk of Court on paper, not electronically.  The caption of the amended complaint must contain only the name of the individual plaintiff and defendant Big Lots, Inc.  It shall be accompanied by a copy of the original complaint and a copy of this order.  Upon filing, the Clerk will assign a new docket number and will allot the case to Section "R."  All pleadings regarding that claim shall thereafter bear the new title, docket number, and section of the new case.

It is further ORDERED that defendant's motion to transfer is denied.  This order is conditioned upon the plaintiffs' agreeing to videotape the depositions of witnesses beyond the Court's subpoena power and appearing in person at trial to testify, as stipulated.

New Orleans, Louisiana, this 16th day of July, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE